METROPOLITAN RAILWAY COMPANY, *a Corporation,* v. J. T. MARTIN.

(Filed September 20, 1907.)

(91 Pac. 1034.)

1.   APPEAL—Review—Sufficiency of Evidence. Where there is evidence in the case which reasonably tends to support the special findings of the jury, and the general verdict, the decision will not be reversed on a question of fact.

2.   SAME—Inconsistency of Findings   Where there is a reasonable theory, deducible from the evidence in the case, upon which the special findings of the jury and their general verdict are sustained, the court will not disturb the general verdict because

another theory may be drawn from the evidence with which the special findings and the general verdict are inconsistent. The court will not examine the evidence with a view to ascertaining if it is possible to evolve from the evidence a theory upon which an inconsistency may be discovered between the special findings and the general verdict.

(Syllabus by the Court.)

*Error from the District Court of Oklahoma County; before B. F. Burwell, Trial Judge.*

Affirmed.

*Shartel, Keaton & Wells*, for plaintiff in error.

*S. A. Byers* and *Grant & McAdams*, for defendant in error.

### STATEMENT OF THE CASE.

This was an action begun by J. T. Martin against the Metropolitan Railway Company in the district court of Oklahoma county on December 16, 1903. The petition claims damages for personal injuries received by the plaintiff by being thrown from a car of the defendant by the negligence of the defendant in running their car at an unusual high rate of speed around a curve, and running by the usual stopping place for passengers after the signal had been given to stop, and that in consequence of such high rate of speed at that point, and the running by the usual stopping place, and the fact of the car going around a curve, caused the plaintiff to be thrown from the car and injured. To this petition defendant filed an answer, said answer containing a general denial of the allegation of the petition, and also the allegation of contributory negligence on the part of the plaintiff, to which answer the plaintiff filed a reply of general denial. Upon these pleadings the case was tried to a jury, and a verdict rendered for $1,250 in favor of the plaintiff. Motion for new trial was filed in due time, overruled, and exceptions saved, and judgment pronounced on the verdict, and the case is brought here for review.

Opinion of the court by

IRWIN, J.: The first assignment of error urged by plaintiff in error for a reversal of this case is that special findings numbers 2 and 4 are not supported by any evidence in this case. Special finding No. 2 is: "Was the car on which plaintiff was riding operated at a dangerous rate of speed at or about the time of the accident?" Answer: "Yes." Special finding No. 4 is: "Was there any more swaying or jarring of the car at or about the time of plaintiff's injury than was incident to operating the same in the usual or ordinary manner on approaching the curve near 17th street?" Answer: "Yes." But it is contended by plaintiff in error that there is no evidence tending to support either one of these findings. Under the well-recognized rule of this court, if an examination of the record does show that there is evidence which reasonably tends to support the findings of the jury, the same will not be disturbed on a question of fact. At page 10 of the record, in the testimony of the plaintiff Martin, he testifies that after passing 16th street, he rang the bell giving the signal to the motorman to stop at the next stopping place. He then, on approaching 17th street, went out on the platform and told the conductor he wanted off. The conductor gave the motorman the signal to stop. He testified the place where he asked to be allowed to get off was where he had often been permitted to get off the car. He testified that the car did not stop at the usual place, 17th street, but ran by at full speed, and that the place where he was thrown from the car was on a curve and that the stopping place was on a curve. The witness Davis, at page 67 of the record, testified that the car was going at about the usual rate of speed. Now, we think a fair inference to be drawn from the testimony of Davis that they were going about the usual rate of speed would mean the usual rate of speed between stopping places, and not mean the usual rate of speed on approaching a stopping place, particularly where that stopping place was on a curve. Now, we think it will not be seriously contended that if

this car, at the time of the accident, was approaching a stopping place, and was on a curve, and was running at full speed, as testified to by Martin, this would not be negligence on the part of the company. As against this proposition and the testimony of Martin and Davis, is the testimony of the motorman and conductor in charge of the car. Now, it was the province of the jury to determine from this evidence, which was conflicting and contradictory, as to where the burden of proof was. They had a right to take into consideration, and no doubt did take into consideration, the appearance and demeanor of the witnesses on the stand, their interest in the result of the suit, and from all the circumstances surrounding the testimony, determine on which side was the burden of proof. They had a right to take into consideration, and no doubt did, the fact that if this car was run in a negligent manner, and injury was the result of negligence, it was the negligence of either the motorman or conductor, and with this conflict of testimony before the jury, we are not prepared to say there was no evidence which reasonably tends to support the finding of the jury.

We have, in addition to the testimony of these two witnesses, Martin and Davis, other physical facts developed by the evidence which tend to corroborate Martin as to the rate of speed at which the car was running. Martin testified (record, page 14) that he was dragged not less than thirty yards from where he first fell from the car to where he was jerked loose from it and where he lay until he was picked up unconscious. Livingston swears (record, page 26) that it was from 40 to 50 yards from where he was lying to where the car was finally brought to a stop. Davis swears (record, page 67) that it was from 40 to 50 yards from where plaintiff was found on the ground to where the car was brought to a full stop. Now, if we add this distance to 30 yards, the distance Martin was dragged before he was jerked loose from the car, it would make 70 or 80 yards from the time he was thrown from the car until the car came to a full stop. The testimony

of Colt, who testified that he had formerly been conductor on defendant company's cars, and was familiar with the running of cars, was that from 20 to 25 yards from the time the motorman got the signal would be sufficient distance to stop the car, if running at the ordinary rate of speed. Then he was asked this question on cross-examination, by counsel for plaintiff in error: "Suppose you are not slowing up, suppose you are running on schedule, like that University line for which the time is twelve miles an hour?" Answer: "Well, I think a man could stop a car in 25 yards." Now, if this testimony is reliable, and the motorman could stop a car running at the rate of 12 miles an hour in the distance of 25 yards from the time he got the signal, then we think it is some evidence which the jury had a right to consider as to the rate of speed that this car was traveling when it was not stopped in less than 60 to 80 yards after the man was thrown from the car, because the testimony of the conductor is that he saw him when he jumped or was thrown from the car, or as plaintiff said, "jerked from the car," and the presumption is that he would stop the car as soon as possible. It seems to us this was a circumstance that would warrant the jury in finding that the car at the time of the accident was being operated at an unusual and dangerous rate of speed.

Now, as to the fourth special finding, that there was more swaying or jarring of the car at the time the plaintiff was injured than was incident to operating the car in the usual or ordinary manner, while there is possibly no satisfactory· and direct testimony as to this proposition, we think that the jury had a right, from their common knowledge and experience as men, to find that, where a car was run at a high and dangerous rate of speed around a curve,, there would be more swaying and jarring of the car than would occur if the car was operated in the usual and ordinary manner, and with usual and ordinary care.

The second assignment of error is: The special findings are inconsistent with the general verdict under the court's instructions.

We have examined the record carefully, and are unable to say that this assignment of error is tenable. In fact, we think it is not borne out by the record. It is true, counsel for plaintiff in error indulge in what seems to us a fine spun theory, under which theory it might be presumed there was a certain inconsistency between the general verdict of the jury and certain special findings. They do this by limiting and fixing the place of the accident at a few feet south of the usual stopping place of the car, and insist that, because the evidence does not show the injury occurred at the exact and precise point of stopping, it is inconsistent with the instructions of the court on this proposition. We think the court's instructions clearly and correctly define the law governing this class of cases, and the testimony of the plaintiff, if believed by the jury, would establish a case of negligence against the company, as his testimony was that he took his position on the platform, after the signal had been given to stop, and while they were approaching the stopping place, with the thought in his mind that they would stop at the usual place of stopping after they had been signaled to stop and after he had notified the conductor that he wanted to get off, but that they ran by the usual stopping place at a full speed, and that it was in consequence of the speed of the car going around the curve at or near the stopping place and the jarring of the car that threw him from the car; that he grabbed at the railing to save himself, and was dragged some distance by the car, and thus sustained his injury. This, it is true, is disputed by the conductor, who testifies that in place of being thrown from the car he voluntarily jumped from the car after he had been warned not to do so. This statement of the conductor is expressly denied by the plaintiff, and it was clearly a question of fact which was the sole province of the jury to determine. They have determined that fact in favor of the plaintiff. The instructions of the court clearly and distinctly informed the jury, that before the plaintiff could recover, the jury must believe from all the circumstances, and all the evidence

showing his station on the car, that he was using reasonable care and caution to avoid injury. They were expressly instructed that if the jury believed from the evidence showing his situation on the car that he was negligent, and that the negligence contributed to his injury, he could not recover. They were also expressly instructed that, if a recovery was had against the company, it must be upon evidence showing the negligence of the company. On the whole, we think the instructions of the court were fully as liberal to the defendant as the law would warrant, or the defendant had a right to expect.

Having examined the entire record, and finding no error therein, the judgment of the district court is affirmed, at the costs of the plaintiff in error.

Burwell, J., who presided in the court below, not sitting; Pancoast, J., absent; all the other Justices concurring.